THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| REGALO INTERNATIONAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-1103-LPS-CJB |
| | ) | |
| MUNCHKIN, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT MUNCHKIN, INC.'S OPENING BRIEF IN SUPPORT OF
MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL
PANITCH, SCHWARZE, BELISARIO & NADEL LLP**

OF COUNSEL:
R. Cameron Garrison
Travis W. McCallon
LATHROP & GAGE LLP
2345 Grand Blvd., Suite 2200
Kansas City, MO 64108
(816) 292-2000

John W. Shaw (No. 3362)
David M. Fry (No. 5486)
SHAW KELLER LLP
300 Delaware Ave., Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
dfry@shawkeller.com
*Attorneys for Defendant Munchkin, Inc.*

Dated: March 1, 2016

## <u>TABLE OF CONTENTS</u>

**Page**

I.      NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

II.     SUMMARY OF ARGUMENT ..................................................................................... 1

III.    STATEMENT OF FACTS ........................................................................................... 2

IV.     ARGUMENT ............................................................................................................. 4

      A.      Legal standards. ............................................................................................. 4

      B.      Regalo's interests are materially adverse to Munchkin's interests. ....................... 6

      C.      This matter is substantially related to matters for which Panitch previously
             represented Munchkin. ........................................................................................ 6

      D.      Current Panitch attorneys, including attorneys of record in this case,
             possess confidential Munchkin information material to this matter. ..................... 9

      E.      A screen will not cure the conflict, and the Panitch firm apparently has not
             implemented a screen, in any event. .................................................................. 10

V.      CONCLUSION ........................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*,
   No. 10-1067-LPS, 2011 WL 2692968 (D. Del. June 22, 2011) ............................4, 5, 6, 7, 8, 9

**Statutes**

Title 35 of the United States Code, §§ 1 *et seq.*..............................................................................1

Patent Laws........................................................................................................................................1

**Other Authorities**

Rule 1.9..............................................................................................................................................9

Rule 1.9(a)..........................................................................................................................................4

Rule 1.10(a)........................................................................................................................................5

Rule 1.10(b) ...............................................................................................................................5, 6, 10

Rule 1.10(b)(2)'s................................................................................................................................9

Rule 1.10 cmt. [2] ..............................................................................................................................6

Rules 1.6 and 1.9(c) ...........................................................................................................................5

Rules 1.9 and 1.10..............................................................................................................................4

Rules 1.9(a) and 1.10(b).................................................................................................................5, 6

## I.    NATURE AND STAGE OF PROCEEDINGS

This is an action for patent infringement brought by Plaintiff Regalo International, LLC ("Regalo") under the Patent Laws of the United States, Title 35 of the United States Code, §§ 1 *et seq.* Defendant Munchkin, Inc. ("Munchkin") has answered the Complaint and the Court has Ordered the parties to meet and confer on the matters listed on Chief Judge Stark's Case Management Checklist. No other activities have taken place in this matter to-date.

## II.    SUMMARY OF ARGUMENT

1.    Plaintiff Regalo's attorneys in this intellectual property matter, the law firm of Panitch Schwarze Belisario & Nadel LLP, served as intellectual property attorneys for defendant Munchkin for seven years, from 2008 through 2014—and not merely for boilerplate matters or in connection with one-off requests. Rather, the Panitch firm, through Laura Genovese, served as outside global trademark counsel for Munchkin. As a result, the Panitch firm handled *hundreds* of matters for Munchkin requiring continuous, specific advice in relation to innumerable unique issues. This broad and deep representation brought the Panitch firm into contact with confidential information regarding all aspects of Munchkin's business, including its litigation strategies and philosophies.

2.    In addition, Ms. Genovese in the course of her work for Munchkin specifically shared confidential Munchkin information with Mr. Fred Tecce—a Panitch attorney who now appears as counsel for Regalo on the pleadings in this case. Specifically, Ms. Genovese provided key information about Munchkin's litigation disposition and strategies to Mr. Tecce, in order to allow him to attempt to obtain additional business from Munchkin, including intellectual property litigation. The Model Rules of Professional Conduct are designed to prevent just such a situation. As such, the Court should disqualify the Panitch firm from representing Regalo in this matter.

## III.    STATEMENT OF FACTS

The law firm of Panitch Schwarze Belisario & Nadel LLP, which represents plaintiff Regalo International, LLC in this patent infringement action, continuously represented Munchkin Inc. in conjunction with a significant number of intellectual property matters from January 2008 through December 2014.  (See Declaration of Laura Genovese ("Genovese Decl."), ¶¶ 3-4).

Specifically, Laura Genovese has served as Munchkin's outside global trademark counsel for approximately twenty-five years, and has handled or been involved in virtually all of Munchkin's trademark applications in the United States and abroad throughout its entire corporate history.  (Genovese Decl., ¶¶ 4-5).  Ms. Genovese was an attorney at the Panitch firm from January 2008 through December 2014, and was a partner at the firm from January 2012 until December 2014.  (Genovese Decl., ¶ 3).  She served as outside global trademark counsel for Munchkin during her entire tenure at the Panitch firm.  (Genovese Decl., ¶ 4).

While she was an attorney at the Panitch firm, and as a result of her roles as outside global trademark counsel for Munchkin, Ms. Genovese was frequently exposed to confidential business information concerning not only Munchkin's trademark portfolio and corresponding strategies, but also related issues like Munchkin's licensing positions and strategies, product development and placement strategies, and overall market positioning strategies.  (Genovese Decl., ¶ 6).  She was also frequently exposed to Munchkin's confidential litigation information, including Munchkin's litigation philosophies, strategies, and risk tolerances.  (Genovese Decl., ¶ 7).  In fact, she provided firsthand assistance with strategy development, factual discovery, and document production in certain Munchkin litigation matters.  (Genovese Decl., ¶ 7).

The scope of Ms. Genovese's work for Munchkin while at the Panitch firm was significant.  Indeed, she had approximately fifty (50) open matters at any given time, and she transferred 152 matters away from Panitch when she left the firm in December 2014.  (Genovese

2

Decl., ¶ 9).  Ms. Genovese saved documents and communications from all of her matters and other communications with Munchkin in Panitch's system.  (Genovese Decl., ¶¶ 6-7).

Since the beginning of 2008, the Panitch firm invoiced Munchkin approximately $667,267 for legal work performed on Munchkin's behalf.  (Genovese Decl., ¶ 10).  The work performed by Panitch on behalf of Munchkin included work done by two individuals – Keith Jones and Donna Marks – who are still employed at Panitch.  *Id.*  Mr. Jones is an Associate who spends a substantial amount of his time working on IP litigation cases such as this matter.  *Id.*

While a partner at the Panitch firm, Ms. Genovese also communicated confidential information to other Panitch attorneys, including specifically one of the attorneys identified as counsel of record in this action.  (Genovese Decl., ¶¶ 11-12).  Indeed, Ms. Genovese frequently shared information about Munchkin's business and its active and prospective intellectual property matters at Panitch's partnership meetings.  (Genovese Decl., ¶ 12).  Even more specifically, Ms. Genovese arranged for Fred Tecce, an intellectual property attorney at Panitch and counsel of record in this case, to meet with Munchkin's General Counsel and its Chief Executive Officer, in order for Mr. Tecce to pitch Panitch's intellectual property litigation services.  (Genovese Decl., ¶ 11).  In preparation for this meeting, Ms. Genovese gave Mr. Tecce a detailed explanation of Munchkin's business and intellectual property and informed him about Munchkin's litigation activities, including specifically its litigation philosophies, decision-making, and prior strategies in intellectual property cases.  (Genovese Decl., ¶ 11).  She also directed Mr. Tecce to certain Munchkin litigation documents held by Panitch.  Mr. Tecce subsequently met with Ms. Rader and Mr. Dunn at Munchkin's headquarters.  (Genovese Decl., ¶ 11).

After Ms. Genovese left the Panitch firm, her Panitch e-mail account remained active even as she had no access to it.  (Genovese Decl., ¶ 13).  Moreover, e-mails sent to her Panitch e-mail address were routed directly to a remaining partner at Panitch.  As a result, Panitch received e-mails from and about Munchkin that the sender intended to send to Ms. Genovese, including specifically communications and documents concerning a market study that Munchkin had conducted.  (Genovese Decl., ¶ 13).  Despite Ms. Genovese's requests that Panitch deactivate her e-mail account, Panitch continued to receive and re-route e-mails sent to her address until November 2015, almost a year after she left the firm.  (Genovese Decl., ¶ 13).

That very same month, Mr. Tecce and Mr. Butler of the Panitch firm filed the complaint in this case, alleging that Munchkin is infringing Regalo's patents.  Munchkin did not give the Panitch firm consent to represent Regalo in this action, nor did the Panitch firm seek such consent.

## IV.    ARGUMENT

### A.    Legal standards.

Motions to disqualify counsel are governed by the ethical standards of the court before which the relevant attorneys appear, and the District of Delaware has adopted the Model Rules of Professional Conduct ("M.R.P.C.").  *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, No. 10-1067-LPS, 2011 WL 2692968, *5 (D. Del. June 22, 2011).  Two specific rules are pertinent here: M.R.P.C. Rules 1.9 and 1.10.

Rule 1.9(a) governs a lawyer's duties to former clients:

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

This Court has held that three questions are relevant in determining whether a current matter is "substantially related" to a matter in a former representation: "(1) What is the nature and scope of the prior representation at issue? (2) What is the nature of the present lawsuit against the former client? (3) In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action?"  *Intellectual Ventures I*, 2011 WL 2692968 at *5 (internal quotation omitted).

Rule 1.10(a) generally imputes a conflict of interest for an individual lawyer to all lawyers associated in a firm, while Rule 1.10(b) specifically governs imputed conflicts when the representing attorney is no longer associated with the firm:

> When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless:
>
> (1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
>
> (2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(c) that is material to the matter.

Taken together, an analysis under Rules 1.9(a) and 1.10(b) turns on whether the representations at issue are "substantially related" and whether the remaining lawyers in a firm possess a former client's material, confidential information.

Generally speaking, "disqualification is proper when the similarity in the two representations is enough to raise a common-sense inference that what the lawyer learned from his former client will prove useful in his representation of another client whose interests are adverse to those of the former client."  *Intellectual Ventures I*, 2011 WL 2692968 at *5 (internal quotation omitted).  Any doubts should be resolved in favor of the party seeking disqualification, "in order to ensure protection of client confidences."  *Id.*

**B.** **Regalo's interests are materially adverse to Munchkin's interests.**

As an initial matter, there can be no dispute that Regalo's interests in this matter (this lawsuit) are materially adverse to Munchkin's interests. Indeed, the parties are on opposite sides of the same litigation matter. As a result, this matter triggers the "materially adverse" prong of both M.R.P.C. Rules 1.9(a) and 1.10(b).

**C.** **This matter is substantially related to matters for which Panitch previously represented Munchkin.**

The Panitch firm formerly represented Munchkin by way of Ms. Genovese's representation of Munchkin while an attorney at that firm. Indeed, the Model Rules reflect the principles that "a firm of lawyers is essentially one lawyer" for purposes of the duty of loyalty to a client, and that "each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated." M.R.P.C. Rule 1.10 cmt. [2]. As a result, Rule 1.10(b) prohibits the Panitch firm from representing Munchkin even after Ms. Genovese's departure in matters substantially related to those handled by Ms. Genovese while she was at Panitch (if current Panitch lawyers possess material, confidential Munchkin information). Here, Panitch's representation of Regalo is substantially related to Ms. Genovese's representation of Munchkin while at Panitch.

As noted above, the first consideration in determining whether two representations are substantially related is "the nature and scope of the prior representation." *Intellectual Ventures I*, 2011 WL 2692968 at \*5. In this case, the scope and nature of Ms. Genovese's representation of Munchkin not only centrally involved intellectual property, but was both broad and deep. Ms. Genovese's representation of Munchkin was not merely restricted to general advice on a one-off basis, but consisted of a continuous flow of numerous matters (during all seven of her years at Panitch), all of which required detailed advice about innumerable specific intellectual property

6

issues.  Moreover, because Ms. Genovese, as Munchkin's outside global trademark counsel, was involved with virtually *all* of Munchkin's trademarks throughout its entire history, she had detailed, in-depth exposure to numerous other issues relating to Munchkin's business and intellectual property litigation matters, including Munchkin's strategies and strategic philosophies.  In short, Munchkin intimately trusted Ms. Genovese—and thus the Panitch firm—as a comprehensive business advisor.

 Regarding "the nature of the present lawsuit against the former client"—the second consideration in determining whether two representations are substantially related—Regalo in this action alleges that Munchkin has infringed three of its patents relating to bed rail systems. *See Intellectual Ventures I*, 2011 WL 2692968 at *5.  Regalo seeks damages and injunctive relief.  (*See* D.I. 1).

Although the full extent of this action is not yet known, it already implicates a number of issues with respect to which the Panitch firm previously represented Munchkin.  As an initial matter, both this action and Panitch's prior matters for Munchkin centrally involve(d) intellectual property rights.   All of the relevant Panitch attorneys here—from Ms. Genovese to Messrs. Tecce and Butler—all practice intellectual property law almost exclusively.  Although Regalo will no doubt argue that Ms. Genovese never represented Munchkin directly in connection with patent infringement matters, this Court has held that matters related to intellectual property rights broadly involve the same subject matter for purposes of assessing a motion for disqualification even if the particulars of the intellectual property issues are not identical.  *See Intellectual Ventures I*, 2011 WL 2692968 at *10.

Moreover, Ms. Genovese's dealings with and exposure to Munchkin's licensing positions and strategies, product development and placement strategies, and overall market positioning

strategies are relevant to this action. (*See* Genovese Decl., ¶ 6). Munchkin's product development and placement strategies necessarily implicate all intellectual property infringement issues, while its licensing positions and strategies implicate Regalo's request for damages (including in the form of a reasonable royalty). Perhaps even more importantly, Ms. Genovese's knowledge of Munchkin's litigation philosophies, strategies, and risk tolerances—particularly in the context of intellectual property actions—implicates virtually every aspect of Regalo's current action against Munchkin. (*See* Genovese Decl., ¶ 7). Indeed, this information could impact and inform Regalo's own strategies in bringing and maintaining this action.

This last point is particularly pertinent to the final consideration of whether Munchkin might have disclosed confidences to the Panitch firm that could be relevant to this action. *See Intellectual Ventures I*, 2011 WL 2692968 at *5. As explained above, Ms. Genovese shared key confidential information about Munchkin's business and litigation strategies and experiences with Mr. Tecce. (Genovese Decl., ¶ 12). Not only that, she did so in order to better position Mr. Tecce to obtain work from Munchkin that is exactly like the work Mr. Tecce is now doing for Regalo—and *against* Munchkin. (Genovese Decl., ¶ 12). Mr. Tecce therefore has the benefit of an intimate, insider view of Munchkin in relation to intellectual property litigation. His knowledge of Munchkin's tendencies and prior strategies could inform everything from how many and what type of claims to bring in this action, to how to pursue discovery, to how to position any settlement strategy, to what witnesses to depose, to how to depose those witnesses, and so on.

Certainly, the lengthy, continuous, and in-depth nature of Ms. Genovese's representation of Munchkin in relation to intellectual property matters sets a striking backdrop to Panitch's representation of Regalo in this matter. As this Court has recognized, "the most important"

8

consideration in assessing disqualification is "protecting former client's confidences." *Intellectual Ventures I*, 2011 WL 2692968 at *9.  In that case, the Court found that there was "at least a common sense inference" that the information a firm learned in its prior representation of a client would prove relevant and harmful to that client in the firm's subsequent representation of an adverse party.  *Id.* at *11.  That is exactly the case here.  Given Ms. Genovese's representation of Munchkin while at the Panitch firm and her sharing of information with Mr. Tecce, Panitch's representation of Regalo through Mr. Tecce himself in this case raises at least a common sense inference that Mr. Tecce and Panitch possess relevant information that is harmful to Munchkin— and advantageous to Panitch and Regalo.

### D.   Current Panitch attorneys, including attorneys of record in this case, possess confidential Munchkin information material to this matter.

Rule 1.10(b)(2)'s requirement that lawyers remaining at a firm possess confidential information overlaps substantially with the final factor discussed above for assessing whether two representations are substantially related pursuant to Rule 1.9 (whether Munchkin might have disclosed confidences to the Panitch firm that could be relevant to this action).  In this context, and for all of the reasons noted above, Mr. Tecce's inside knowledge of Munchkin's confidential business and litigation strategies is undoubtedly material to this matter.

The Panitch firm itself plainly views Mr. Tecce's involvement in this case to be a benefit to Regalo, and that is precisely why he is on the pleadings.  Indeed, given the Panitch firm's recent history as attorneys for Munchkin and Mr. Tecce's more specific knowledge of and contact with Munchkin, there is little reason for the firm to put Mr. Tecce on this case, *save the fact that it gives the firm and its client, Regalo, a significant advantage here*.  To any observer— and most certainly to the relevant former client, Munchkin—the only plausible implication based on these facts is that the Panitch firm is leveraging its significant, continuous representation of

9

Munchkin over a number of years to further its own benefit and that of its adverse client.  The facts therefore trigger Rule 1.10(b)'s prohibition, disqualifying the Panitch firm in this matter.

> **E.      A screen will not cure the conflict, and the Panitch firm apparently has not implemented a screen, in any event.**

The Panitch firm cannot rely upon any internal screen to avoid disqualification in this matter, either.  As an initial matter, it is clear that the Panitch firm has not initiated any such screen.  Indeed, if the Panitch firm had so initiated a screen, it almost certainly would have prevented Mr. Tecce from communicating with anyone at Panitch about this case, let alone appear on the pleadings.  Mr. Tecce's appearance on the pleadings suggests that the Panitch firm was not at all concerned about any potential conflict it might have in this matter on account of its prior representation of Munchkin.

Likewise, it is far too late for the Panitch firm to initiate a meaningful screen.  Given that Mr. Tecce has already participated in this matter and almost certainly advised Regalo based upon his exposure to Munchkin and its confidential information, the proverbial cat is already out of the bag.  The Court should not allow the Panitch firm to escape disqualification through any ad hoc attempt or promise of an internal screen.

## V.      CONCLUSION

Common sense dictates the result here.  The only possible way to protect client confidences—as well as further a system that appears to protect client confidences—is to disqualify the Panitch firm from representing Regalo in this matter.  Munchkin therefore respectfully requests that the Court do so, and grant such further relief as it deems just and proper.

/s/ David M. Fry
John W. Shaw (No. 3362)
David M. Fry (No. 5486)
SHAW KELLER LLP
300 Delaware Ave., Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
dfry@shawkeller.com
*Attorneys for Defendant Munchkin, Inc.*

OF COUNSEL:
R. Cameron Garrison
Travis W. McCallon
LATHROP & GAGE LLP
2345 Grand Blvd., Suite 2200
Kansas City, MO 64108
(816) 292-2000


Dated: March 1, 2016