IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| REGALO INTERNATIONAL, LLC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 15-1103-LPS-CJB |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| MUNCHKIN, INC., | ) | |
| | ) | |
| Defendant | ) | |

**DECLARATION OF LAURA GENOVESE IN SUPPORT OF
DEFENDANT MUNCHKIN, INC.'S MOTION TO DISQUALIFY COUNSEL**

I, Laura A. Genovese, declare as follows:

1.      I am over the age of majority, competent to make this Declaration, and, unless otherwise stated, have personal knowledge of the facts set out below.

2.      I am an attorney and principal at K & G Law LLC, in Ambler, Pennsylvania.

3.      I was previously an attorney at the law firm of Panitch Schwarze Belisario & Nadel LLP and its predecessor firm, Akin Gump Strauss Hauer & Feld LLP (collectively, "Panitch"), from May 2005 until December 2014. I was a partner at the Panitch firm from January 2012 until December 2014. I understand that the Panitch firm represents the plaintiff, Regalo International, LLC, in the above-captioned action.

4.      I have represented Munchkin, Inc., the defendant in the above-captioned action, as its outside global trademark counsel for approximately twenty-five years. More specifically, I became outside trademark counsel for Munchkin in or about 1991, shortly after Munchkin came into existence, and have represented Munchkin continuously in that capacity ever since. I served as outside global trademark counsel for Munchkin during my entire tenure at the Panitch firm, from May 2005 until December 2014.

5.     As outside global trademark counsel for Munchkin, I have handled or been involved in virtually every one of Munchkin's trademark applications in the United States and abroad for the last twenty-five years. This includes everything from Munchkin's high-level brand trademarks to its trademarks for particular products, and everything in between. I have also handled numerous trademark opposition proceedings on Munchkin's behalf.

6.     Through my role as outside global trademark counsel for Munchkin, I am frequently exposed to confidential business information concerning not only Munchkin's trademark portfolio and corresponding strategies, but also related issues like Munchkin's licensing positions and strategies, product development and placement strategies, and overall market positioning strategies. This was true throughout my tenure at the Panitch firm, and I saved documents and communications regarding this sort of information into Panitch's electronic file management system.

7.     By the same token, I am also frequently exposed to Munchkin's confidential litigation information, including Munchkin's litigation philosophies, strategies, and risk tolerances. I have also participated in and assisted with strategy development, factual discovery, and document production in certain Munchkin litigation matters. This was true throughout my tenure at the Panitch firm, and I saved documents and communications regarding this sort of litigation information into Panitch's electronic file management system.

8.     As longtime outside counsel for Munchkin, I have frequent contact with Munchkin's Vice President and General Counsel, Petty Rader. I also have relatively frequent contact with Munchkin's Chief Executive Officer, Steven Dunn, and/or its acting officers and business managers. This was true throughout my tenure at the Panitch firm.

{00018708 1 }

9.     The scope of my work for Munchkin has resulted in a high volume of continuous work. I estimate that I have an approximate average of fifty (50) open matters for Munchkin at any given time. And at the time that I left the Panitch firm in December 2014, I transferred 152 active matters to K & G Law LLC. No active Munchkin matters remained at Panitch after I left.

10.     Since the beginning of 2008, the Panitch firm invoiced Munchkin approximately $667,267 for legal work performed on Munchkin's behalf. The work performed by Panitch on behalf of Munchkin included work done by two individuals – Keith Jones and Donna Marks – who are still employed at Panitch. Mr. Jones is an Associate who spends a substantial amount of his time working on IP litigation cases such as this matter.

11.     While I was a partner at the Panitch firm, I communicated confidential Munchkin information specifically to Panitch attorney Fred Tecce, an intellectual property attorney who now appears as counsel for plaintiff on the pleadings in the above-captioned action. In particular, while I was a partner at the Panitch firm I arranged for Mr. Tecce to meet with Ms. Rader and Mr. Dunn of Munchkin, in order for Mr. Tecce to pitch additional services to Munchkin, including specifically intellectual property litigation representation. In preparation for this meeting, I gave Mr. Tecce a detailed explanation of Munchkin's business and intellectual property and informed him about Munchkin's litigation activities, including specifically its litigation philosophies, decision-making, and prior strategies in intellectual property cases. I also directed Mr. Tecce to certain Munchkin litigation documents saved in Panitch's system, as well as physical files, so that he could review them prior to meeting with Munchkin. Mr. Tecce subsequently met with Ms. Rader and Mr. Dunn at Munchkin's headquarters.

12.     While I was a partner at the Panitch firm, I attended multiple meetings among the partners during which partners were encouraged to share information concerning current firm

{00018708 1 }

3

clients and their respective matters.   In this context, and on multiple occasions, I shared information about Munchkin's business and its active and prospective intellectual property matters with my partners.   To the best of my knowledge, a number of partners who attended these meetings are still partners at Panitch today, including Mr. Tecce.

13.     After I left the Panitch firm in December 2014, my Panitch e-mail account remained active despite the fact that I had no access to it.   Not only did the account remain active, e-mails sent to my Panitch e-mail address were routed directly to Patricia Rogowski, a patent litigation partner in Panitch's small Delaware office who assumed the responsibilities of Panitch's trademark group after I left the firm.   I am aware that, as a result of Panitch's re-routing of e-mails sent to my Panitch e-mail address, Ms. Rogowski (and therefore, Panitch) received e-mails from and about Munchkin that the sender intended to send to me, including specifically communications and documents concerning a market study that Munchkin had conducted.   I am also aware that on several occasions Ms. Rogowski received e-mails sent to my Panitch e-mail address without notifying me that Panitch had received the e-mail.   To the best of my knowledge, and despite my prior requests that Panitch deactivate my Panitch e-mail account, Panitch continued to receive and re-route e-mails sent to my address until November 2015, almost a year after I left the firm.

14.     To the best of my knowledge, all of the documents and communications concerning Munchkin and its matters that I saved in Panitch's electronic file management system remain there today.   During my tenure at Panitch, when clients left the firm all electronic files remained accessible to all attorneys and staff.   To the extent that Panitch has not changed its protocols since I left in December 2014, anyone in the firm can access all of these documents simply by keying Munchkin's client number into the system.

{00018708 1 }

4

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this *3* day of February, 2016, at *Ambler, Pennsylvania*

*Laura A. Genovese*

Laura A. Genovese