## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REGALO INTERNATIONAL, LLC )<br><br>*Plaintiff,* )<br><br>v. )<br><br>MUNCHKIN, INC. )<br><br>*Defendant.* ) | Civil Action No. 1:15-cv -1103-LPS-CJB |

### DECLARATION OF FREDERICK A. TECCE

I, Frederick A. Tecce, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

    1.    I am over the age of eighteen years and am competent to testify as to the matters asserted herein.  I make this Declaration based upon personal knowledge of the matters set forth herein.  I submit this Declaration opposing *Defendant Munchkin, Inc.'s Motion to Disqualify Plaintiff's Counsel Panitch, Schwarze, Belisario, & Nadel, LLP.*

    2.    Because of the nature of Munchkin's motion, this Declaration may touch on attorney work product, as well as attorney-client privileged information.  I have attempted to provide sufficient details necessary for the Court to properly evaluate the motion, while not disclosing any information protected as attorney work product or privileged attorney-client communications.  It is not my intent to, and I do not waive either attorney work product immunity for the information or subjects addressed herein, nor waive attorney-client privilege for the information or subjects addressed herein.  I am prepared, however, to provide additional details to the Court if it desires regarding the information and subjects addressed herein, via *in camera* submission or a similar procedure that will ensure the information is protected attorney work product and/or attorney-client privileged.

3.      I was admitted to practice in the Commonwealth of Pennsylvania in 1986 during my tenure as a law clerk to Judge Anthony J. Scirica, then of the United States District Court for the Eastern District of Pennsylvania. I was admitted to practice in New York in 1987. I worked as an Assistant U.S. Attorney in the criminal division of the United States Attorneys Office for the Eastern District of Pennsylvania from 1989 to through 1993 and then as a Special Assistant United States Attorney assigned to Main Justice from 1993 through the end of 1998.

4.      In February 1998, I was one of the two founding partners of the law firm McShea\Tecce, P.C. a general practice litigation boutique. I left that firm effective December 31, 2011.

5.      In January 2012, I joined the law firm Panitch Schwarze Belisario & Nadel, LLP ("Panitch") in an "Of Counsel" capacity. Effective January 2013, I became an equity partner at Panitch.

6.      I have confirmed by reviewing records from McShea\Tecce, P.C. that I was first retained to represent Regalo International, LLC ("Regalo") almost eighteen years ago in April, 1998 – approximately two months after starting that firm.

7.      I have confirmed by reviewing the billing records from McShea\Tecce, P.C. that during the thirteen years we represented Regalo (between April 1998 and December 2011), we billed and collected many hundreds of thousands of dollars in attorneys' fees for a number of patent matters. In fact, I was lead counsel in a patent litigation action filed in the United States District Court for the District of Minnesota asserting two of the patents in this case against a third party (*Regalo International, LLC v. DEX Products, Inc.*, Civil Action No. 08-cv-04206 (D. Minn.)).

8.      My representation of Regalo has continued since I joined Panitch in January

2012. Since that time we have billed Regalo attorneys' fees of nearly $200,000 for a number of

matters including patent litigation, *inter parties* reexamination; patent prosecution; patent

licensing; patent enforcement; and an appeal to the United States Court of Appeals for the

Federal Circuit.

9.      In or about the Fall of 2012, I travelled to California to meet with a number of

Panitch's current clients, as well as other clients for whom I had done work in the past, in an

effort to generate litigation work.

10.     As part of the trip, and because I was scheduled to be in the Los Angeles,

California area, Laura Genovese arranged a meeting between me, Munchkin's CEO and

President (Steven Dunn), and its in-house counsel (Petty Rader) for the purpose of being

considered as litigation counsel in a case that Munchkin was already involved.  Prior to the

instant motion, I had only a vague recollection of that case but have been able to determine

from a search of PACER that it was *Munchkin, Inc. v. Playtex Products, LLC.*, Civil Action

No. 2:11-cv-00503 (C.D. Cal. 2011).  Based upon a review of the PACER docket, the case

involved allegations by Munchkin against Playtex for false marketing and advertising

concerning diaper pail odors.  Munchkin contended Playtex had wrongly challenged

Munchkin's advertising for its diaper pail, where Playtex objected to Munchkin's

advertising asserting that tests had shown that Munchkin's diaper pail "is the industry leader

in controlling odors."  Munchkin Complaint at ¶ 1.  The *Playtex* unfair competition case

about diaper pail advertising in no way relates to the current patent infringement case

against Munchkin for patent infringement by its bed rail products.

11.     I have reviewed the Declaration of Laura Genovese (Doc. No. 15) filed in

connection with Munchkin's motion ("Genovese Decl.").  In Paragraph 11, she states that in

preparation for my meeting with Munchkin, she provided me with "a detailed explanation of Munchkin's business and intellectual property." Genovese Decl. at ¶ 11. Ms. Genovese is silent as to whether any of the business and intellectual property information she alleged provided was the same or substantially related to the subject matter of the instant case. This is because it was not.

12.     In paragraph 11 of her Declaration, Ms. Genovese further states that in preparation for my meeting with Munchkin, she informed me "about Munchkin's litigation activities, including specifically its litigation philosophies, decision-making, and prior strategies in intellectual property cases." Genovese Decl. at ¶ 11. Again, Ms. Genovese does not aver that the information she provided was in any way the same or substantially related to the subject matter of the instant case. The reason for this is obvious, the information was in no way related to the instant case.

13.     Finally, Ms. Genovese states that she "directed" me "to certain Munchkin litigation documents saved in Panitch's system, as well as physical files, so that he could review them prior to meeting with Munchkin." Genovese Decl. at ¶ 11. Ms. Genovese does not specifically identify the documents to which she refers, nor does she indicate how those documents are the same or substantially related to the current patent infringement action against a Munchkin regarding the accused child bed rail. I do recall printing publicly available documents from PACER as would have been my practice. However, I do not recall any Munchkin documents that may have been shared with me by Ms. Genovese. Further, although I have never – under any circumstances – searched for or reviewed any Munchkin documents in our document management system since Ms. Genovese left our firm, I understand that a recent search of that system failed to reveal that any documents

were provided to me.  Since the filing of the instant motion, I no longer have access to the Munchkin files that may have been saved in our document management system, as Munchkin's records have been configured such that no Panitch personnel have access to the records.

14.     During my meeting with Munchkin's CEO and in-house counsel, our entire conversation focused on the *Playtex* litigation false advertising litigation concerning whether Munchkin's diaper pail was indeed the industry leader in controlling odors.  A review of the *Playtex* docket sheet confirms my recollection that in July 2012 – prior to the time we met – the jury had awarded Munchkin $13.5 million in damages on its false advertising claims against Playtex.

15.     I recall that we discussed ramifications of a possible remitter by the district court judge in the *Playtex* diaper pail odor case.  Again, a review of the *Playtex* docket sheet reveals that in October 2012 – after we had met – the district court ordered a new trial on the grounds that the instruction to the jury to presume injury to Munchkin from Playtex's marketing was in error.  At the time, my perception was:  (1) the meeting was scheduled solely as a courtesy to Ms. Genovese; (2) Munchkin had absolutely no interest in hiring me as its litigation counsel; and (3) the meeting was nothing more than an opportunity for Munchkin to obtain free legal advice.

16.     The *Playtex* docket further reveals that the case was reassigned to another judge who excluded Munchkin's damages theories and ordered judgment for Playtex on all claims.  A Lexis search reveals that an appeal by Munchkin to the Ninth Circuit to reinstate the $13.5 million verdict was denied.  *Munchkin, Inc. v. Playtex Prods., LLC*, 2015 U.S. App. LEXIS 13424 (9th Cir. 2015).

17.     During the meeting at Munchkin, Munchkin's CEO bragged that his litigation philosophy could be summed up by the license plate on his car, which he wanted to see if I could "interpret." On a white board, he wrote up the following: "GET●2468." I quickly responded to him that it meant: "Get even." He confirmed that this was his intended meaning and his philosophy.

18.     At no time since that one meeting in the Fall of 2012 have I ever again spoken with anyone from Munchkin. Neither I nor the Panitch firm was ever retained by Munchkin to provide any litigation services whatsoever concerning any subject matter at all, let alone the subject matter of the patent infringement from the sale of Munchkin's accused Sleep™ bed rail. Further, Panitch has never been retained to provide any type of patent services to Munchkin including, but not limited to, patent prosecution; patent licensing; patent clearance work; and patent post-grant review work.

19.     A review of Panitch's firm billing information reveals that at no time were we ever retained to provide any type of services regarding the accused Munchkin Sleep™ bed rail product at issue in this litigation.  Specifically, neither our firm nor Ms. Genovese was retained to provide patent or trademark services in respect of the bed rail product. Ms. Genovese was never retained even for trademark services regarding the accused Munchkin Sleep™ bed rail product.

20.     A review of the United States Patent and Trademark Office website reveals that although Munchkin has a federally registered mark for Sleepster® for children's pajamas, which was obtained by Ms. Genovese, Munchkin has not registered or applied to register "Sleep" as a trademark for bed rail products.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Philadelphia, Pennsylvania on March 18, 2016

By: _____

Frederick A. Tecce