**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **REGALO INTERNATIONAL, LLC** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | **Civil Action No. 1:15-cv -1103-LPS-CJB** |
| | ) | |
| **MUNCHKIN, INC.** | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**DECLARATION OF PATRICIA SMINK ROGOWSKI**

I, Patricia Smink Rogowski, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am over the age of eighteen years and am competent to testify as to the matters asserted herein.  I make this Declaration based upon personal knowledge.  I submit this Declaration opposing *Defendant Munchkin, Inc.'s Motion to Disqualify Plaintiff's Counsel Panitch, Schwarze, Belisario, & Nadel, LLP*.

2.      Because of the nature of Munchkin's motion, this Declaration may touch on attorney work product, as well as attorney-client privileged information.  I have attempted to provide sufficient details necessary for the Court to properly evaluate the motion, while not disclosing any information protected as attorney work product or privileged attorney-client communications.  It is not my intent to, and I do not waive either attorney work product immunity for the information or subjects addressed herein, nor waive attorney-client privilege for the information or subjects addressed herein.  I am prepared, however, to provide additional details to the Court if it desires regarding the information and subjects addressed herein, via *in camera* submission or a similar procedure that will ensure the information is protected attorney work product and/or attorney-client privileged.

1

3.      Since February 2014, I have been a Partner in the law firm Panitch Schwarze Belisario & Nadel, LLP ("Panitch").  Prior to this, I was a Partner of Novak Druce Connolly Bove & Quigg LLP and Connolly Bove Lodge & Hutz LLP in Wilmington, Delaware.

4.      I am a member in good standing of the Delaware and Pennsylvania Bars and registered in good standing with the United States Patent and Trademark Office.

5.      Prior to January 2014, two attorneys were primarily (and almost exclusively) responsible for handling trademark matters at Panitch, Laura A. Genovese and Maureen Kassner. In January 2014, a senior attorney brought some trademark matters with him to Panitch and intended to transfer responsibility for these to Ms. Genovese and Ms. Kassner prior to his retirement.  When I joined Panitch in February 2014, I brought substantial trademark work that I have continued to manage in my practice.  It was never my intention to transfer responsibility for my clients' trademark work to Ms. Genovese or Ms. Kassner.

6.      In July 2014, the Panitch Management Committee asked me to assist Ms. Genovese with the trademark work in the Panitch docket for matters that had been handled by Ms. Kassner, who I understood was likely to leave the employ of Panitch.  To my knowledge, Ms. Kassner was not handling any matters for Munchkin, and my review of Ms. Kassner's docket calendar with Ms. Genovese did not include review of any Munchkin records or documents.

7.      Ms. Kassner did leave Panitch, but not until sometime in November 2014.  To my surprise, in late November 2014, Ms. Genovese withdrew from the partnership at Panitch to start a new law firm with Ms. Kassner.

8.      The date that Ms. Genovese gave her notice in late November 2014, the Panitch Management Committee requested me to assist with all trademark matters for clients who

instructed that their matters stay with Panitch.  As part of this effort, incoming telephone calls and e-mails for Ms. Genovese and Ms. Kassner were re-routed to me.

9.      When telephone calls came to our switchboard asking for Ms. Genovese or Ms. Kassner, they were directed to me.  When telephone calls came directly to Ms. Genovese's or Ms. Kassner's prior Panitch telephone extensions, they were routed to me.  I identified myself by name to incoming telephone callers, and immediately provided the new contact information for Ms. Genovese and Ms. Kassner when requested.

10.      For all clients who authorized transfer of their matters to Ms. Genovese and Ms. Kassner, it was my intention, and to my best knowledge, I forwarded all incoming client-related e-mails addressed to lgenovese@panitchlaw.com and mkassner@panitchlaw.com to Ms. Genovese and Ms. Kassner at their new firm.  Because my interactions with Ms. Genovese were mainly unpleasant after she left Panitch, I acknowledge that a few of the client-related e-mails for Ms. Genovese were forwarded to Christine Smith, a paralegal working with Ms. Genovese and Ms. Kassner at their new firm.  I resumed forwarding e-mails to Ms. Genovese when she made known that she preferred this.

11.      After making a lateral move myself in February 2014, I appreciate that it takes a long time for a network of contacts to update to a new e-mail address.  I also forwarded incoming personal e-mails addressed to lgenovese@panitchlaw.com and mkassner@panitchlaw.com.

12.      Panitch has a general trademark e-mail address that is supposed to be used when filing trademark applications and other papers with the U.S. Patent and Trademark Office: usptotm@panitchlaw.com.  This general trademark e-mail address is monitored by our trademark paralegal.  Upon taking over responsibility for trademark work in progress, I came to find that

some matters had been filed using the individual attorney e-mail addresses: lgenovese@panitchlaw.com or mkassner@panitchlaw.com, without including the general trademark e-mail address. This meant that outgoing e-mail notifications from the Trademark Office were only being sent to these individual attorney e-mail addresses until new powers of attorney could be filed. While most US trademark application matters remain pending a matter of months, some applications can be suspended and remain pending for years. Unfortunately, it has taken us substantial time to audit the Panitch trademark docket calendar and update the powers of attorney to ensure that correspondence from the Trademark Office will be routed properly.

13.     On December 1, 2014, Munchkin authorized transfer of all of its matters to Ms. Genovese at her new firm. In December 2014, our file room personnel transferred the paper records of Munchkin to Ms. Genovese.

14.     I never represented Munchkin, never worked on any Munchkin matter in any capacity and have never reviewed any confidential information of Munchkin. When I determined that incoming e-mails sent to lgenovese@panitchlaw.com were from clients who had authorized transfer to Ms. Genovese at her new firm, such as Munchkin, I forward the e-mails without reviewing their substance or any attachment. I never accessed any electronic documents that may have been stored in our firm's network under the associated Munchkin client number.

[REMAINDER OF THIS PAGE INTENTIONALLY BLANK.]

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Wilmington, Delaware on March 18, 2016

By: _____
Patricia Smink Rogowski