IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| REGALO INTERNATIONAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 15-1103-LPS-CJB |
| | ) | |
| MUNCHKIN, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT MUNCHKIN, INC.'S REPLY BRIEF
## IN SUPPORT OF ITS MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL
## PANITCH, SCHWARZE, BELISARIO & NADEL LLP

OF COUNSEL:
R. Cameron Garrison
Travis W. McCallon
LATHROP & GAGE LLP
2345 Grand Blvd., Suite 2200
Kansas City, MO 64108
(816) 292-2000

Dated: March 31, 2016

John W. Shaw (No. 3362)
David M. Fry (No. 5486)
SHAW KELLER LLP
300 Delaware Ave., Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
dfry@shawkeller.com
*Attorneys for Defendant Munchkin, Inc.*

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.    ARGUMENT ................................................................................................. 2

    A.    This matter is substantially related to matters for which Panitch previously represented Munchkin .......................................................................... 2

        1.    Regalo's conception of "substantial relatedness" is incorrect. .................. 2

        2.    Regalo cannot rebut Munchkin's showing of "substantial relatedness." ................................................................................... 3

    B.    Regalo's current argument justifies Munchkin's concern. ................................... 7

III.    CONCLUSION ............................................................................................ 10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apeldyn Corp. v. Samsung Elecs. Co., Ltd.*,
    660 F. Supp. 2d 557 (D. Del. 2009)......................................................................10

*Cardona v. Gen. Motors Corp.*,
    942 F. Supp. 968 (D.N.J. 1996) .........................................................................6, 7

*In re Corn Derivatives Antitrust Litig.*,
    748 F.2d 157 (3d Cir. 1984)....................................................................................7

*Intellectual Ventures LLC v. Checkpoint Software Techs. Ltd.*,
    C.A. No. 10-1067-LPS, 2011 WL 2692968 (D. Del. June 22, 2011)............................ *passim*

*Kabi Pharmacia AB v. Alcon Surgical*, Inc.,
    803 F. Supp. 957 (D. Del. 1992)............................................................................8

*Kaselaan & D'Angelo Associates, Inc. v. D'Angelo*,
    144 F.R.D. 235 (D.N.J. 1992).................................................................................7

*Reliant Pharm., Inc. v. Par Pharm., Inc.*,
    C.A. No. 06-774-JJF, 2008 WL 1826036 (D. Del. Apr. 23, 2008) ...........................................4

*Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*,
    491 F. Supp. 2d 510 (D. Del. 2007)........................................................................3

*Ullrich v. Hearst Corp.*,
    809 F. Supp. 229 (S.D.N.Y. 1992)..........................................................................6

*Walker Digital, LLC v. Axis Comm. AB*,
    C.A. No. 11-558-RGA, 2012 WL 5878668 (D. Del. Nov. 21, 2012)..................................3, 4

*Webb v. E.I. Du Pont de Nemours & Co., Inc.*,
    811 F. Supp. 158 (D. Del. 1992)...................................................................6, 9, 10

## I.      INTRODUCTION

Regalo's opposition is dependent upon an erroneous proposition of law—namely, that disqualification is only appropriate in infringement cases when the attorneys being challenged have worked on patent matters for the opposing party that involve the same patents or same technology currently at issue.  This Court has previously rejected this very argument, holding that a nexus between facts and legal theories is not a necessary prerequisite to disqualification.

This error on Regalo's part taints its entire position, as it clouds its interpretation of all of its cited case law and allows it to artificially gloss over the numerous facts in this case that warrant disqualification.  Indeed, Regalo quickly brushes aside the Panitch firm's recent representation of Munchkin in hundreds of matters over numerous years, all under cover of the claim that no single matter involved patent infringement claims over the products at issue here. This misplaced claim ignores that current Panitch attorneys possess confidential Munchkin information on numerous issues that are relevant here.

In fact, Regalo via its opposition has already begun using Munchkin's confidences against it, as it divulges and relies on strategic information that lead counsel for the Panitch firm obtained in confidence from Munchkin's CEO *during Panitch's representation of Munchkin*. This result would have been unfathomable to Munchkin at the time it was represented by Panitch, and it now undermines the thrust of the Model Rules of Professional Conduct.

Those Rules are meant to prevent even the potential that a former client's confidences will be used against it and to maintain public confidence in the integrity of the bar.  The appearance of impropriety is already high in this case, leading to a common sense inference that the knowledge that Panitch gained representing Munchkin will continue to be harmful to Munchkin in this case.  Nothing more is required in order to disqualify Panitch.

## II.     ARGUMENT

### A.     This matter is substantially related to matters for which Panitch previously represented Munchkin.

Throughout its opposition, Regalo repeats the refrain that Munchkin "does not even attempt" to identify a prior matter that is substantially similar to the present case.  (*See e.g.* D.I. 19, pp. 1, 9, 10).  Regalo's attempt to use this refrain to shortcut the issue fails for two reasons: (1) it is based on a one-dimensional understanding of the "substantially related" requirement that is simply wrong; and (2) Munchkin *did* address the "substantially related" requirement at length (*see* D.I. 14, pp. 6-9), but Regalo's improper framework wholly negated its ability to appreciate—let alone respond to—the substantial similarity between its prior representation of Munchkin and its current representation of Regalo.

#### 1.     Regalo's conception of "substantial relatedness" is incorrect.

Regalo reduces the "substantially related" requirement to a rigid rule that requires virtual identity between a discrete prior representation and a current representation.  Thus, Regalo brushes away its representation of Munchkin in "dozens" of matters—which, in reality, is *hundreds* of matters—arguing instead that Munchkin has not identified "one case" in which "Panitch represented Munchkin in a similar matter to the patent infringement alleged in the current litigation." (D.I. 19, p. 12).

This Court has explicitly rejected this conception of the "substantially related" requirement as "too narrow."  *Intellectual Ventures LLC v. Checkpoint Software Techs. Ltd.*, C.A. No. 10-1067-LPS, 2011 WL 2692968, *9 (D. Del. June 22, 2011).  Indeed, Regalo's argument that "disqualification is only appropriate" in patent infringement cases "when the attorneys being challenged have personally worked on *patent matters* for the opposing party

involving the *same* patents or *same* technology" as that now at issue (D.I. 19, p. 3 (emphases added)), is directly contrary to this Court's holding in *Intellectual Ventures*:

> WSGR contends that because it never provided legal advice in the context of litigation involving patent infringement, its prior representation of IV cannot be substantially related to a patent infringement lawsuit. *This Court disagrees.*

2011 WL 2692968 at *8 (emphasis added); *see id.* at *9 (stating that the Court "disagrees with [the] contention that in order for disqualification to be proper, there must be a 'factual nexus' between the prior representation and current representation").

Rather, as the *Intellectual Ventures* Court recognized, "matters are 'substantially related' for purposes of this Rule if they involve the same transaction or legal dispute *or* if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." *Id.* (emphasis in original) (quoting M.R.P.C. 1.9 cmt.). Thus, beyond the similarity in facts or legal theories between representations, "the most important consideration is protecting a former client's confidences." *Id.* Regalo's opposition reflects none of this.

## 2. Regalo cannot rebut Munchkin's showing of "substantial relatedness."

Regalo's improper framework for assessing substantial relatedness taints its efforts to discredit Munchkin's position. As an initial matter, Regalo interprets all of its cited case law through this framework, which causes it to ignore critical facts that readily distinguish these cases from this matter. In *Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*, 491 F. Supp. 2d 510, 513 (D. Del. 2007), for example, the plaintiff sought to disqualify one of the defendant's counsel despite the fact that the prior representation at issue was fourteen years prior to the current action, involved an entity that was not a party to the current action, and did not involve the plaintiff at all. In *Walker Digital, LLC v. Axis Comm. AB*, C.A. No. 11-558-RGA, 2012 WL

5878668, at *3 (D. Del. Nov. 21, 2012), there was no evidence that the attorney at issue "was involved in any discussions of [the relevant party's] strategies for patent prosecution, claim drafting, or licensing/litigation/monetization of their patents," and, in any event, the prior representation was fifteen years prior to the current action.  And in *Reliant Pharm., Inc. v. Par Pharm., Inc.*, C.A. No. 06-774-JJF, 2008 WL 1826036, at *3 (D. Del. Apr. 23, 2008), the law firm at issue "was not [the relevant party's] primary transactional counsel" in the prior representation (four years prior), and it therefore "spent a minimal amount of time reviewing and advising [the relevant party]."  Unlike all of these cases, Panitch filed the complaint in this case on behalf of Regalo less than a year after Panitch ended its years-long representation of Munchkin as global trademark counsel, a role that involved hundreds of detailed matters.

Regalo's insistence that Panitch must have represented Munchkin in a patent infringement matter involving the same patents or similar technology also prevents it from appreciating this Court's more practical approach to evaluating factual similarity.  For example, the representations at issue in *Intellectual Ventures* did not both involve patent infringement matters; rather, the earlier representation centered on corporate formation, while the later representation involved patent infringement.  *See* 2011 WL 2692968 at *2.  Again repudiating a narrow approach, however, the Court found factual overlap between the representations because Intellectual Venture's business "is about intellectual property rights."  *Id.* at *10.  "In a broad way," the Court therefore concluded, the current representation implicated the same subject matter as the prior representation.  *Id.*  Here, as in *Intellectual Ventures*, Panitch's prior representation of Munchkin specifically involved *intellectual property rights*, just as the current patent infringement suit does.

In addition, one of Munchkin's primary concerns is that Panitch's representation of Munchkin was both broad and deep, spanning hundreds of matters over multiple years, and

involving very specific and detailed advice regarding numerous issues that are relevant here.  As Ms. Genovese explained in her declaration, her role as outside global trademark counsel for Munchkin exposed her to confidential information concerning not only Munchkin's trademark portfolio and strategies, but related issues like Munchkin's licensing positions and strategies, product development and placement strategies, overall market positioning strategies, as well as litigation strategies.  (Genovese Decl. (D.I. 15), ¶¶ 6-7).  These issues relate not only to the merits of Regalo's claims for infringement and damages, but also to the strategies pursued by Regalo in mediation and through settlement discussions.

Notably, Regalo does not dispute that Panitch's representation of Munchkin was both broad and deep.  (*See* D.I. 19, p. 13).  Instead, it simply circles back to the same assertion that the representation never had anything to do with the legal theories or products that are now at issue in this case.  Here again, however, Regalo runs up against *Intellectual Ventures*, where the Court in disqualifying the defendant's counsel specifically noted that its prior representation of the plaintiff, while not involving patent litigation, "was both broad in nature and extensive in scope." 2011 WL 2692968 at *10.  And the Court cited numerous ways in which such extensive *non-litigation* representation might impact the litigation before it.  *See id.*  For example, the Court explained that counsel during the prior representation "had access to confidential information about the value [the relevant party] places on its license portfolio, which may be substantially related to damages."  *Id.*  In the same way, the numerous, detailed touch points that Panitch had with Munchkin are directly relevant to Panitch's representation of Regalo in this case—

regardless of whether or not Panitch established those touch points by previously representing Munchkin in a patent infringement action.[1]

Although Regalo also recognizes that the extent to which Munchkin might previously have disclosed confidences to Panitch that would be detrimental to Munchkin in this case is a relevant factor in assessing substantial relatedness (D.I. 19, p. 10), it gives short shrift to the fact that Panitch was previously exposed to Munchkin's litigation strategies, tendencies, and philosophy, calling them "irrelevant."  Regalo once again runs headlong into the law, however. In *Webb v. E.I. Du Pont de Nemours & Co., Inc.*, 811 F. Supp. 158, 162 (D. Del. 1992), for example, the court explained that the Model Rules are "not designed merely to prevent the disclosure of confidences by the lawyer" but also concern themselves "with the lawyer's *use* of confidential information in a manner adverse to the interests of the former client that trusted the lawyer with its confidences."  (Emphasis added).  Thus, the *Webb* court reasoned (in a quote later reproduced by the *Intellectual Ventures* Court) that knowledge of strategy-related information is directly relevant to disqualification:

> Adverse use of confidential information is not limited to disclosure. It includes knowing what to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject, and innumerable other uses.

*Id.* (quoting  *Ullrich v. Hearst Corp.*, 809 F. Supp. 229, 235-36 (S.D.N.Y. 1992)); *see Intellectual Ventures*, 2011 WL 2692968 at *11.

Likewise, in *Cardona v. Gen. Motors Corp.*, 942 F. Supp. 968, 973 (D.N.J. 1996)—another case cited by the *Intellectual Ventures* Court on this point—the court held that "similarity in the two representations is enough to raise a common-sense inference that what the

---

[1] Regalo also makes much of the fact that Mr. Tecce has represented Regalo for years, including while at Panitch.  But this fact is irrelevant to whether or not Panitch's representation in this case, which is directly adverse to Munchkin, is a conflict requiring disqualification.

lawyer *learned* from his former client will prove useful in his representation of another client whose interests are adverse to those of the former client."  (Emphasis in original); *see Intellectual Ventures*, 2011 WL 2692968 at *5.  Thus, that court specifically held that counsel's prior knowledge of the relevant party's "litigation philosophy, its methods and procedures for defending claims and litigation, and its information regarding the administration of various business operations" was sufficient to create substantial relatedness for purposes of later litigation, even if the later litigation didn't share any specific factual relatedness to the prior representation.  *Cardona*, 942 F. Supp. at 973 (quoting *Kaselaan & D'Angelo Associates, Inc. v. D'Angelo*, 144 F.R.D. 235, 240-41 (D.N.J. 1992)).  This is exactly the sort of strategy-related information that Panitch possesses by way of its prior representation of Munchkin (a point Munchkin explains in more detail in the following section).

In sum, Regalo asks this Court to cast aside the circumstances of this case as a matter of law by taking hardline positions regarding "substantial relatedness" that the Court has previously refused to take.  In reality, however, there is good reason and precedent for the Court to take seriously the extensive relationship Panitch previously had with Munchkin and the inevitable impact that representation will have on Panitch's directly adverse representation of Regalo here.

**B.    Regalo's current argument justifies Munchkin's concern.**

As noted above, "protecting a former client's confidences" is of utmost importance in assessing disqualification.  And both this Court and the Third Circuit have explained that "M.R.P.C. 1.9 exists for the purpose of preventing 'even the potential that a former client's confidences and secrets may be used against him,' to maintain 'public confidence in the integrity of the bar,' and to fulfill a client's rightful expectation of 'the loyalty of his attorney in the matter for which he is retained.'"  *Intellectual Ventures*, 2011 WL 2692968 at *5 (quoting *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 162 (3d Cir. 1984)).  In fact, given the importance of

maintaining "public confidence in the propriety of the conduct" of members of the bar, "a court may disqualify an attorney 'for failing to avoid even the appearance of impropriety.'" *Intellectual Ventures*, 2011 WL 2692968 at *4 (quoting *Kabi Pharmacia AB v. Alcon Surgical, Inc.*, 803 F. Supp. 957, 960 (D. Del. 1992)).  Here, Regalo, via Panitch, *is already using* Munchkin's confidences against it, and is therefore shattering any appearance of propriety and undermining the very purposes of the Model Rules.

Indeed, on multiple occasions in its opposition, Regalo divulges information that the Panitch firm obtained from Munchkin's CEO, Steven Dunn, during Panitch's representation of Munchkin.  And Regalo does so not only to take a position *against* Munchkin in this case, but also ostensibly to cast Mr. Dunn and Munchkin in a negative light.  Thus, in describing a meeting between Mr. Dunn and Panitch's lead counsel in this case, Frederick Tecce, Regalo states that "Mr. Dunn boasted that his litigation strategy could be summed up by the vanity license plate on his car: GET•2468—which he described as 'get even.'"  (D.I. 19, p. 2; *id.* p. 7).  Moreover, insinuating that this alleged litigation strategy drove Munchkin's filing of the instant motion, Regalo chastises Munchkin's current counsel, stating that "sometimes it is our job to tell clients 'no.'"  (D.I. 19, p. 16).  This is consistent with Mr. Tecce's communications to counsel for Munchkin during the parties' meet and confer regarding the instant motion.

Regalo's and Panitch's use of Mr. Dunn's statements in this regard reveal that they have done *nothing* to avoid any conflict of interest or appearance of impropriety in connection with this matter.  Indeed, as Regalo and Panitch present it, one would assume that the meeting that Mr. Tecce had with Mr. Dunn was a cold-call between unacquainted and unaffiliated entities.  But Regalo and Panitch ignore that the Panitch firm, necessarily including Mr. Tecce, *was actively representing Munchkin at the time*—in literally hundreds of matters.  (Genovese Decl. (D.I. 15), ¶ 11).  Regalo and Panitch have therefore disclosed a former client's confidences in

order to advance their position here.  Needless to say, this result would have been unfathomable to Munchkin at the time it disclosed those confidences to its then-active counsel, Panitch.

Regalo apparently sees no problem with using Mr. Dunn's statements against Munchkin, because "Munchkin's CEO displays his litigation philosophy on his license plate."  (D.I. 19, p. 12).  But, even assuming that this is true, it does nothing to excuse Regalo's and Panitch's breach of confidence.  Indeed, how would Regalo know that Munchkin's CEO's (former) license plate supposedly reflects his litigation philosophy, other than because Mr. Dunn told Panitch (specifically, its current lead counsel in this matter) as much in the context of a client relationship?[2]  Moreover, as Munchkin has explained, Ms. Genovese gave Mr. Tecce a detailed explanation of Munchkin's business and intellectual property, including Munchkin's litigation strategies and decision-making, and directed him to Munchkin litigation documents and files stored at Panitch.  (Genovese Decl. (D.I. 15), ¶¶ 11-12).  Mr. Tecce's knowledge—and access— therefore goes well beyond any general information open to the public.[3]

Moreover, in suggesting that this motion was filed as an improper attempt to "get even" with Panitch, Regalo has already explicitly tied its knowledge of Munchkin's alleged litigation philosophy to Munchkin's interactions with its current attorneys.  Thus, the information that Regalo and Panitch possess is not merely a vague and useless insight—Regalo and Panitch are actually relying on and using such information as a window into Munchkin's actions *in this case*. This is the epitome of the "adverse use of confidential information" as explained in *Webb*.  *See*

---

[2] Mr. Tecce speculates in his declaration that "the meeting was nothing more than an opportunity for Munchkin to obtain free legal advice."  (Tecce Decl. (D.I. 20), ¶ 15).  Even if this were true, however, it simply re-emphasizes that Munchkin was Panitch's client at the time.

[3] Regalo's reliance on Mr. Dunn's statements also negates its argument elsewhere that only a small amount of the time billed by Panitch to Munchkin was billed by timekeepers that remain at Panitch.  Indeed, Mr. Tecce is the attorney that met personally with Mr. Dunn, and he is Panitch's lead counsel in this case.  Moreover, and in any event, M.R.P.C. 1.10 assumes that one or more lawyers have terminated an association with a firm, and that rule still dictates that disqualification may be appropriate.

811 F. Supp. 158, 162.  And, given that this case is still in its infancy, there is at least a "common sense inference" that the information that Panitch learned in its previous representation of Munchkin will continue to prove relevant and harmful to Munchkin as this case progresses.  *See Intellectual Ventures*, 2011 WL 2692968 at *11.

Finally, Panitch's failure to initiate any serious internal screen is now more glaring than ever.  Indeed, Regalo's opposition papers note that Panitch denied its personnel access to the substantial catalog of Munchkin files still stored at Panitch only *after* Munchkin filed the instant motion.  (Decl. Tecce (D.I. 20), ¶ 13 ("Since the filing of the instant motion, I no longer have access to the Munchkin files that may have been saved in our document management system . . . ."); *see id.* at Butler Decl. (D.I. 22), ¶ 12).  Panitch's failure to identify and even attempt to vet this issue before it took on this matter for Regalo or filed its complaint (on the heels of representing Munchkin for years) heightens the appearance of impropriety here, as another judge in this district—in a case cited by Regalo—has recognized:

> Although Mr. Goodwyn has not recorded any billable time to this case, the appearance of impropriety in MLA's representation of a party adverse to Samsung is reflected in the fact that Mr. Goodwyn's representation of Samsung in the Mosaid litigation was not thoroughly vetted at the time he began his employment at MLA, the fact that Samsung was not alerted to his representation of Apeldyn at bar (unlike the procedure used in the CEA litigation), and the fact that MLA's conflict review was limited to what amounted to a word search . . . .

*Apeldyn Corp. v. Samsung Elecs. Co., Ltd.*, 660 F. Supp. 2d 557, 562 (D. Del. 2009).

## III.   CONCLUSION

There is already an appearance of impropriety here, and Regalo has already begun using information it learned during its representation of Munchkin against Munchkin in this case.  The only possible way to prevent further harm to Munchkin—and further a system that appears to protect client confidences—is to disqualify the Panitch firm.  Munchkin therefore respectfully requests that the Court do so, and grant such further relief as it deems just and proper.

OF COUNSEL:

R. Cameron Garrison

Travis W. McCallon

LATHROP & GAGE LLP

2345 Grand Blvd., Suite 2200

Kansas City, MO 64108

(816) 292-2000

Dated: March 31, 2016

Respectfully submitted,

*/s/ David M. Fry*

John W. Shaw (No. 3362)

David M. Fry (No. 5486)

SHAW KELLER LLP

300 Delaware Ave., Suite 1120

Wilmington, DE 19801

(302) 298-0700

jshaw@shawkeller.com

dfry@shawkeller.com

*Attorneys for Defendant Munchkin, Inc.*